# Bracken v. Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Highway crossings—" Stop, look and listen "—Instruction—Harmless error.*

Where the defendant in a grade-crossing case asks the trial judge to charge that a person entering upon five tracks of a railroad, must look and listen even after crossing the third track, and the trial judge denies the request, saying that it is not the law that a person is bound to stop, look and listen, between the several tracks, the appellate court will treat the error as harmless, and not reverse the judgment, when it appears that two other points were submitted by the defendant each defining virtually the same standard of duty as was asserted in the first, and both of which were unqualifiedly affirmed.

*Negligence—Railroads—Grade crossings—Witnesses—Opinions—Expert.*

Witnesses who are familiar with a particular grade crossing and have frequently seen trains passing upon it, though not experts, may be permitted to testify that so far as they could judge a particular train was running at a rate which was usually maintained at the crossing when the safety gates were closed.

*Practice, C. P.—Amendments—Parties—Parent and child—Death of child—Addition of mother's name—Trespass for negligence—Use plaintiff.*

Where an action in trespass is brought in a father's name for the negligent killing of a child, the mother's name may be added by amendment as a party plaintiff, even after the case has been appealed and reversed, and is called for a second trial.

Where a judgment in trespass in favor of a father for the death of a child is marked to the use of another, and subsequently the case is reversed, and upon trial the name of the mother is added by amendment, omitting the name of the use plaintiff, the omission is not a ground for claiming surprise, and continuance of the case is properly refused.

In such a case the cause of action is in the legal plaintiffs alone, and the use plaintiff, if he has any rights whatever in the action, can recover them only as the cause of action in the legal plaintiff is established on the trial. It is not the right of recovery in any use plaintiff that defendant is called upon to meet, but the right of the legal plaintiff.

Argued Oct. 6, 1908. Appeal, No. 215, Oct. T., 1908, by

defendant, from judgment of C. P. Cambria Co., June T., 1903, No. 32, on verdict for plaintiff in case of Hudson C. Bracken v. The Pennsylvania Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for death of a child. Before O'CONNOR, P. J.

At the trial the defendant, by Mr. Storey as counsel, pleaded surprise as follows:

The court having directed that the jury be qualified to try the case of Hudson C. Bracken against the Pennsylvania Railroad Company, entered to No. 32, June Term, 1903, H. W. Storey, counsel for the defendant company, objects to the changing of the parties at this time—just as the jury is to be sworn—from that of Hudson Bracken, for the use of W. David Lloyd, against the Pennsylvania Railroad Company, for the following reasons:

1. That the record shows that the judgment was assigned to W. D. Lloyd and an appeal taken to the Superior Court in that way.

2. That the cause was put down for trial for the March term of court in the name of Lloyd v. Pennsylvania Railroad Company, and so appears on the official calendar and in the public advertisements in the newspapers, in the list of causes for trial.

3. That the subpoenas issued to the defendant company were in the name of and for the use of W. D. Lloyd against the Pennsylvania Railroad Company.

4. We plead surprise at the changing of the parties at this time and state to the court that we have not subpoenaed any witnesses and have none in court and are unable to meet the case of Bracken (Lloyd) v. Pennsylvania Railroad, therefore, we ask that the cause be continued.

The Court: This cause was heretofore tried in this court under the title of Hudson C. Bracken v. P. R. R. Company. After verdict and judgment entered thereon, the judgment was assigned to W. David Lloyd, and, upon appeal, the judgment entered in the court below was reversed, set aside and a venire

de novo awarded by the Superior Court. We believe this disposes of any claim by Mr. Lloyd out of the assignment of the judgment, as it no longer exists, and the cause of action remains in Hudson C. Bracken, and the jury should be qualified to try that cause.

For this reason we deny the motion of counsel for the defendant company, note an exception and seal a bill. [1]

The attention of the court having been called to the omission to dispose of the rule granted March 6, 1905, to show cause why the plaintiff should not be allowed to amend the statement by including therein the name of Alice Bracken, the mother of the decedent and wife of Hudson C. Bracken, the plaintiff, before jury sworn, upon motion of counsel for plaintiff, that the rule is now made absolute and the name of Alice Bracken is added to the pleadings, as one of the parties plaintiff.

H. W. Storey, counsel for defendant, objects to the amendment for the reason that the statute of limitations interposes, inasmuch as the death of the son occurred on November 29, 1902, and that the making of the rule absolute, after the intervention of several regular terms of court, would be improper and illegal, and we ask the court to note an exception.

The Court: Exception noted and bill sealed. [2]

Louis Schenkemeyer, a witness called by the plaintiff, was asked this question:

Mr. Lloyd: "Q. How was it [the train] going compared with the trains usually going over the crossing?"

Mr. Storey: Objected to for the reason the question calls for an opinion of the witness.

The Court: We overrule the objection, note an exception and seal a bill for defendant.

"Q. How was it going compared with the trains usually going over that crossing? A. I suppose I have seen trains going over that crossing as fast as that train was running, but it is a hard matter for a man that is not familiar with it to tell. Q. Do you mean by that the train was going as fast as the fastest train that you have seen going over that crossing?"

Mr. Storey: Objected to as incompetent and as asking for an opinion from the witness, and for the reason that counsel is at-

tempting to get something out of the witness when he has repeatedly said that he could not determine the speed of any train.

The Court: The objection is overruled, exception noted and bill sealed for the defendant. [3]

"A. I am telling you that the train was going at the usual rate of speed, at a fast rate of speed, and that is about all I can say about that; but there are trains that have run faster through there, I think, as I have understood they have."

Andrew Dennison, a witness called by the plaintiff, was asked this question:

"Q. How fast was it [the train] coming?  A. I could not tell you that.  Q. How fast was it coming compared with passenger trains running over that crossing?"

Mr. Storey: We think this is objectionable; some passenger trains run faster than others.

The Court: The objection is overruled, an exception noted and a bill sealed for the defendant. [4]

"A. It was coming straight at me; I think it was coming pretty fast; it was going as fast as they run passenger trains through there.  Q. Was this train going as fast as passenger trains cross this crossing when the gates are down?  A. Yes, sir; I think it was."

Defendant presented this point:

Where there are five tracks on the main line of a trunk railroad it is the duty of one crossing to look and listen, in both directions, even after he has crossed three of the tracks.

The Court: This proposition is for the jury and the request is denied.  We may add that we know of no court that has ever held, as a proposition of law, that one must stop, look and listen between the several tracks of the railroad.  Negligence has been defined to be a lack of caution according to the circumstances, and the jury must determine whether or not, after one has crossed a number of tracks of a railroad, it would be safer for him to stop, or safer to go on. [5]

Verdict for plaintiff for $1,906.70, upon which judgment was entered for $1,750, all above that amount having been remitted.

414 BRACKEN *v.* PENNSYLVANIA R. R. CO., Appellant.

*Errors assigned* were (1–4) above rulings, quoting the bill of exceptions; and (5) above instructions, quoting them.

*H. W. Storey,* for appellant.—The amendment allowing the addition of the mother of the decedent as a party plaintiff was improper: Bracken v. Penna. R. R. Co., 32 Pa. Superior Ct. 23; Atwater v. Hagar, 10 W. N. C. 189; Railroad Co. v. Decker, 84 Pa. 419; Davis v. Penna. R. R. Co., 34 Pa. Superior Ct. 388.

The evidence as to speed was improperly admitted: Green v. Railroad Co., 65 N. J. L. 301 (47 Atl. Repr. 418); Diele v. Railroad Co., 70 N. J. L. 138 (56 Atl. Repr. 156).

*William Williams,* with him *W. David Lloyd,* for appellees.— The amendment was properly allowed: Herdic v. Woodward, 75 Pa. 479; Insurance Co. v. Tenan, 204 Pa. 332; Com. v. Silcox, 161 Pa. 484; Dougherty v. Com., 69 Pa. 286; Brown v. Com., 78 Pa. 122; Wilkinson v. Northeast Borough, 215 Pa. 486; McFadden v. McFadden, 32 Pa. Superior Ct. 534; Rife v. Middletown, 32 Pa. Superior Ct. 68; Walthour v. Spangler, 31 Pa. 523; Maffitt v. Rynd, 69 Pa. 380; Farmers' & Mechanics' Ins. Co. v. Simmons, 30 Pa. 299; Holmes v. Railroad Co., 220 Pa. 189; Weaver v. Iselin, 161 Pa. 386; Hughes v. Williams, 17 Pa. Superior Ct. 229; Com. v. Dillon, 81* Pa. 41; Waltz v. Railroad Co., 216 Pa. 165.

The evidence is conclusive that the wagon upon which the decedent was riding was standing at the gates when he got on the wagon. The decedent having stopped at the gate, it must be presumed that he looked and listened before entering upon the track, and there is no evidence that the decedent did not look and listen after he had entered upon the tracks. It must, therefore, be presumed that he did look and listen after entering upon the tracks: Cromley v. Railroad Co., 208 Pa. 445; Penna. R. R. Co. v. Weber, 76 Pa. 157; Gray v. Penna. R. R. Co., 172 Pa. 383; Penna. R. R. Co. v. Werner, 89 Pa. 59; Little v. Tel. Co., 213 Pa. 429; Jones v. Railroad Co., 202 Pa. 81; Coleman v. Railroad Co., 195 Pa. 485.

OPINION BY MR. JUSTICE STEWART, January 4, 1909:

That the evidence was sufficient to carry this case to the

jury on the question of defendant's negligence, is not disputed. The effort was to charge the young lad who met his death with contributory negligence. These were the circumstances. The boy, Harry Bracken, under the age of thirteen years, was playing with some companions at a point near the railroad crossing between Johnstown and Morrellville on the Cambria side. The safety gates at the crossing were closed to give a clear track to a passing engine or train, and several wagons and cabs were waiting outside for the lifting of the gates. As soon as lifted these cabs and wagons entered upon the crossing. Young Bracken and two of his companions got upon the rear end of the wagon third from the gates, with a view to cross over. The railroad tracks at this point are five in number. Before proceeding far upon the crossing two of the boys, not because of any sense of danger, but simply to return to the Cambria side, jumped from the wagon. As soon as they had alighted they observed an approaching passenger train coming with rapid speed from the west, and then not more than fifteen or twenty yards from the wagon. They signaled as best they could to Bracken who was well toward the front of the wagon, but in another instant the wagon with Bracken in it having crossed three of the tracks, was on the fatal fourth where the collision occurred. The driver escaped by jumping just in time, the wagon was utterly demolished and the boy instantly killed by the passing train. Several of the witnesses testified that when they saw the boy on the wagon, he was not looking in the direction from which the train approached; none, however, say that they had him under their eyes for more than an instant, and that immediately before the accident occurred. A single witness testified that had the boy looked to the west when the wagon was on track No. 3, while he might not have been able to see the engine or cars of the approaching train, because of standing cars on a nearer track, he could have seen the smoke and steam from the train approaching. The inference defendant sought to derive from the testimony was that the boy was either negligent in failing to observe the train approaching in time to escape the danger, or, if he did observe it, was reckless in attempting to cross track No. 2 after the

danger became apparent. That failure attended the effort to persuade the jury that the boy's negligence contributed to the accident, cannot be surprising to one who reads carefully the evidence. We are here, however, concerned only to inquire whether the defendant, because of misdirection by the trial judge as to the law governing the case, was denied a fair opportunity to make good its contention in this regard before the jury. The complaint is with respect to the answer given the first of the points submitted by the defendant. The point asked the court to say that "Where there are five tracks on the main line of a trunk railroad it is the duty of one crossing to look and listen in both directions even after he has passed three of the tracks." The answer to this question was as follows: "This proposition is for the jury and the request is denied. We may add that we know of no court that has ever held, as a proposition of law, that one must stop, look and listen between several tracks of the railroad. Negligence has been defined to be a lack of caution according to the circumstances, and the jury must determine whether or not, after one has crossed a number of tracks of a railroad, it would be safer for him to stop, or safer to go on." Clearly this answer went wide of the mark, because of a misapprehension of what was included in the point submitted. The attention of the trial judge should have been called to the mistake. The point did not ask instructions to the effect that it was the duty of one who had crossed three tracks to stop, look and listen before entering on the fourth track. Had it embraced any such proposition the refusal of the point would have been entirely correct: Ayers v. Railway Company, 201 Pa. 124. The standard of duty asserted by the point was a legal obligation to look and listen before advancing upon the fourth track; in other words, what the point asserted was, that it is the duty of one attempting to cross several tracks not to cease his watchfulness upon crossing the first or the second in safety, but to continue to exercise his senses and be observant of obvious conditions until the crossing has been accomplished. So explained, the point should have been affirmed. But we cannot see that defendant was in anywise prejudiced by its rejection or the

answer given, in view of the fact that two other points were submitted by the defendant each defining virtually the same standard of duty as was asserted in the first; both of which were unqualifiedly affirmed. These points were, second, "That if the driver and the decedent were guilty of contributory negligence in not looking and listening after entering on the crossing, the plaintiff cannot recover." Fourth, "That if the jury believe the decedent was a bright, intelligent boy and of sufficient mental capacity and knowledge to comprehend danger, and did not use ordinary precaution by looking for the approaching train, the plaintiff cannot recover." There was nothing in the answer to the first point which conflicted in the slightest with the law as declared in the answers to the second and fourth. Had the first point contained what the trial judge supposed, its rejection would have been entirely correct. All the defendant lost through the mistake was a qualified affirmance of the first point, which loss was fully made up by the repeated and unqualified affirmance of the doctrine therein asserted in the answers to the succeeding points. This must have left defendant without prejudice, and because we think this so evident, conceding the mistake, the case does not call for a reversal on this assignment.

The third and fourth assignments relate to the admission of the testimony of several witnesses as to the rate of speed maintained by the train at the crossing. These require but a word by way of review. Not being train men, and being without any experience which would enable them to form any intelligent judgment as to the rate of speed per hour at which the train was moving, but being familiar with the particular crossing, and frequently having seen trains pass at this point, they were permitted to state that so far as they could judge the train was running at a rate which was usually maintained at the crossing when the gates were closed. We see no error in this; the testimony bore upon both disputed points—the negligence of the defendant and the contributory negligence of the boy,—and the question was one of fact in regard to which expert knowledge was not required in order to qualify one to speak with sufficient accuracy for the legitimate purposes of

the case. It could be determined as well from common observation and experience.

The action was originally brought in the name of Hudson C. Bracken, the father of the boy who was killed, and a trial was had on the case as it thus stood on the record, resulting in a verdict for the plaintiff. While a motion for a new trial was pending, and at the instance of the plaintiff, a rule issued to show cause why the name of Alice Bracken, the mother of the decedent, and wife of Hudson C. Bracken, should not be added as party plaintiff. The motion for a new trial having been refused, an appeal was taken to the Superior Court, which resulted in a reversal for errors which are not repeated here, and therefore do not concern us. When the case was called for trial a second time, March 2, 1908, no answer had been filed to the rule for amendment and the motion remained undisposed of. Before the jury was sworn, the attention of the court having been called to the undisposed of motion, the rule was made absolute, and it was ordered "that the name of Alice Bracken be added to the pleadings as one of the parties plaintiff." The jury was then sworn as to both plaintiffs. The action of the court in allowing the amendment is made the subject of another assignment. It is only necessary to refer to the case of Weaver v. Iselin, 161 Pa. 386, as ample and conclusive authority for the action of the court. In that case the suit was brought by the father alone, and the amendment adding the name of the wife as party plaintiff was allowed upon the argument of the appeal in this court from the judgment of the lower court. The matter is thus disposed of in the opinion filed in the case, "We have no doubt as to the right of the plaintiffs to amend, in the manner proposed, even at this stage of the case. It appearing that the name of Susanna Weaver, wife of the plaintiff George Weaver, was omitted from the record by mistake, and counsel having moved to amend by adding her name as one of the plaintiffs, it is ordered that the record be amended accordingly." The amendment in that case was open to every objection that is urged here.

Before the amendment was allowed here changing the parties, the case had appeared on the trial list as that of Hud-

son C. Bracken, to the use of W. D. Lloyd v. Pennsylvania Railroad Company. It seems that after the result was reached on the first trial, Hudson C. Bracken assigned the judgment obtained to Lloyd. The amendment omitted the name of this use plaintiff, and the case stood in the name of the legal plaintiffs alone. Because of this omission defendant claimed surprise and demanded a continuance, which was refused. This refusal to continue is made the subject of the remaining assignment. The fact that the case appeared on the trial list to the use of another than the legal plaintiff, was of no consequence whatever; nor was it at all material that in the appeal to the Superior Court the use plaintiff's name appeared. The cause of action was in the legal plaintiffs alone, and the party marked as use plaintiff, if he had any rights whatever in the action, could recover them only as the cause of action in the legal plaintiffs was established on the trial. It was not the right of recovery in any use plaintiff that defendant was called upon to meet, but the right of the legal plaintiffs. The amendment omitting the use party's name was not merely formal, but wholly unnecessary. If the defendant thought to defeat the action solely because the use plaintiff had no right to recover, and neglected to prepare its defense against the legal plaintiffs who alone had the right of action, it was the kind of mistake which ought never be allowed to delay the trial of a case.

The assignments of error are overruled and the judgment is affirmed.